IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DARYL HAWES, et al.,         )
                             )
            Plaintiffs,      )   CV 00-587-PA
                             )
     v.                      )
                             )
STATE OF OREGON, et al.,     )   **OPINION**
                             )
            Defendants.      )

DANIEL E. O'LEARY
Davis Wright Tremaine LLP
1300 SW Fifth Avenue, Suite 2300
Portland, OR 97201

    Attorneys for Plaintiffs

KAREN LOCHA MOYNAHAN
Oregon Department of Justice
1162 Court Street, Room 100
Salem, OR 97301

    Attorneys for defendant
    State of Oregon

/ / /

1 - OPINION

JAMES S. COON
Swanson Thomas & Coon
900 American Bank Building
612 SW Morrison Street
Portland, OR 97205

    Attorney for Intervenor Defendants
    Institute for Fisheries Resources;
    Pacific Coast Federation of
    Fishermen's Associations; Oregon Trout;
    Northwest Environmental Defense Center; and
    Northwest Environmental Advocates

LOIS J. SCHIFFER
U.S. Department of Justice
P.O. Box 663
Washington, DC  20044-0663

MICHAEL JAMES ZEVENBERGEN
U.S. Department of Justice
Environmental Enforcement Section
7600 Sand Point Way, NE
Bin C 15700
Seattle, WA  98115

    Attorneys for Intervenor Defendant
    United States Environmental
    Protection Agency

PANNER, J.

    Plaintiffs Daryl Hawes, Barbara Hawes, the Baker County Farm Bureau, and the Baker County Livestock Association bring this action for declaratory and injunctive relief against defendant State of Oregon (the State). Plaintiffs contend that the State illegally entered into a Memorandum of Agreement with the federal Environmental Protection Agency (EPA) to apply Total Maximum Daily Load (TMDL) requirements to streams that are being polluted by only non-point sources of contamination, such as farm runoff. The EPA has intervened as

2 - OPINION

1  a defendant, as have environmental organizations including
2  Northwest Environmental Advocates, Oregon Trout, and the
3  Pacific Coast Federation of Fishermen's Associations.
4         The parties have filed cross-motions for summary
5  judgment.  I deny plaintiffs' motion and grant defendants'
6  motions.  Because the court lacks subject matter jurisdiction,
7  this action is dismissed without prejudice and remanded to
8  state court.

## BACKGROUND

10        Plaintiffs contend that the State illegally agreed
11 with the EPA to create TMDL requirements for streams polluted
12 only by nonpoint sources.  (A "point source" is any discrete
13 conveyance through which pollutants are discharged, including,
14 for example, a pipe, ditch, or well.  33 U.S.C. § 1362(14).)
15 A TMDL is a measure of "the maximum amount of pollutants a
16 water body can receive daily without violating the state's
17 water quality standard[s]."  <u>Alaska Center for the Environment</u>
18 <u>v. Browner</u>, 20 F.3d 981, 983 (9th Cir. 1994).
19        In 1998, the Oregon Department of Environmental
20 Quality (DEQ) created a list of "water quality limited"
21 streams statewide.  <u>See</u> 33 U.S.C. § 1313(d)(1) (requiring that
22 states create such lists).  The DEQ's list includes streams
23 that are being polluted only by nonpoint sources.
24        The State and the EPA entered into the Memorandum
25 of Agreement in February 2000.  The Memorandum of Agreement
26 3 - OPINION

provides that the DEQ must develop TMDLs for all water quality limited streams in the state, including streams polluted only by nonpoint sources.

The Memorandum of Agreement provides that the DEQ is to complete TMDLs on a timetable running to June 30, 2007. The DEQ is scheduled to create TMDLs for streams in Baker County in 2005. The EPA will consider a TMDL timely if it is received within one year of the date it is scheduled for completion.

Plaintiffs seek a declaration that the State's Memorandum of Agreement with the EPA is illegal. Plaintiffs bring claims under state law for judicial review of an agency order, and for declaratory and injunctive relief.

**STANDARDS**

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The court should resolve reasonable doubts about

4 - OPINION

the existence of an issue of material fact against the moving party.  Id. at 631.  The court should view inferences drawn from the facts in the light most favorable to the nonmoving party.  Id. at 630-31.

## DISCUSSION

This court lacks subject matter jurisdiction because plaintiffs' claims are not ripe and because plaintiffs lack standing.

**I.  Ripeness**

**A.  Standards**

Ripeness is "'a question of timing.'"  Bonnichsen v. United States, 969 F. Supp. 614, 619 (D. Or. 1997) (quoting Regional Rail Reorganization Act Cases, 419 U.S. 102, 140 (1974)).  The ripeness doctrine is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  Abbott Laboratories v. Gardner, 387 U.S. 136, 148 (1967).

In determining ripeness, the court should consider constitutional and prudential factors.  See Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc), cert. denied, 121 S. Ct. 1078 (2001).  The court's constitutional inquiry looks to whether the issues are "'definite and concrete,'" or "'hypothetical or abstract.'"  Id. at 1139 (quoting Railway Mail Ass'n v. Corsi, 326 U.S. 88, 93 (1945)).  The court's prudential inquiry focuses on "'the

5 - OPINION

1  fitness of the issues for judicial decision and the hardship
2  to the parties of withholding court consideration.'"  Id. at
3  1141 (quoting Abbott Labs., 387 U.S. at 149).  The party
4  asserting jurisdiction bears the burden of establishing it.
5  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).

**B.  Discussion**

A claim is not ripe if it depends on possible future events that may never occur.  Barapind v. Reno, 225 F.3d 1100, 1114 (9th Cir. 2000).  Here, the DEQ will not create TMDLs for streams in Baker County until at least 2005.

Plaintiffs have not shown that the mere existence of the Memorandum of Agreement, without more, causes any legally cognizable injury to them.  "Even when the agency action challenged is 'final' and the issues raised are purely legal, a case is not ripe for adjudication absent the threat of significant and immediate impact on the plaintiff."  Kerr-McGee Chem. Corp. v. United States Dep't of the Interior, 709 F.2d 597, 600 (9th Cir. 1983).

In Ohio Forestry Association, Inc. v. Sierra Club, 523 U.S. 726, 733 (1998), the Sierra Club challenged a United States Forest Service plan for a national forest, contending that the plan would permit too much logging and clear cutting. The Supreme Court held that the Sierra Club's claims were not

6 - OPINION

ripe, even though the plan made logging possible and even likely, because the plan itself did "not authorize the cutting of any trees." Id., 523 U.S. at 729. Similarly, here the State's Memorandum of Agreement does not by itself set TMDLs for streams in Baker County.

The court should not attempt to resolve a legal issue in the abstract before the plaintiff has been injured or is threatened with an immediate injury. Plaintiffs have not shown that they would suffer hardship if I do not address the merits of their claims now. Cf. Association of American Medical Colleges v. United States, 217 F.3d 770, 783-84 (9th Cir. 2000) (noting exception to ripeness doctrine when challenged government action forces the plaintiff to make a "Hobson's choice"). Plaintiffs may challenge the State's authority to create TMDLs if and when plaintiffs are in fact injured by them. See Pronsolino v. Marcus, 91 F. Supp. 2d 1337, 1355 (N.D. Cal. 2000) (under similar facts, court noted that plaintiffs could "appeal unreasonable or unauthorized restrictions within the state administrative system").

**II.  Standing**

**A.  Standards**

The analysis for ripeness and standing often overlap. See Thomas, 220 F.3d at 1139. To establish standing, plaintiffs must show that they have suffered an

7 - OPINION

1  injury in fact because of defendants' conduct, and that the
2  injury would be redressed by a decision in their favor.  See
3  <u>On the Green Apartments L.L.C. v. City of Tacoma</u>, 241 F.3d
4  1235, 1239 (9th Cir. 2001).  An injury in fact is "'an
5  invasion of a legally protected interest which is (a) concrete
6  and particularized, and (b) actual or imminent, not
7  conjectural or hypothetical.'"  <u>Lee v. State of Oregon</u>, 107
8  F.3d 1382, 1387 (9th Cir. 1997) (quoting <u>Lujan v. Defenders of</u>
9  <u>Wildlife</u>, 504 U.S. 555, 560 (1992)).  Plaintiffs must also
10 satisfy "the prudential component of standing; that is,
11 [their] 'complaint must "fall within the zone of interests to
12 be protected or regulated by the statute or constitutional
13 guarantee in question."'"  <u>On the Green Apartments</u>, 241 F.3d
14 at 1239 (citations omitted).

**B.   Discussion**

To demonstrate standing, plaintiffs submit the affidavit of Daryl Hawes (Hawes).  Hawes states that he is familiar with TMDLs imposed as part of the state's plan for the Grande Ronde Basin, which include a temperature TMDL requiring that no "heat load" originate from agricultural sources.  The Clean Water Act defines "heat" as a pollutant, 33 U.S.C. § 1362(6), and the EPA has stated that TMDLs must address the effects of heat caused by sunlight.  Hawes "believe[s]" that a TMDL which limits heat load, if it were to be implemented for the Burnt River basin, would require him to

8 - OPINION

1  change his current methods of irrigation, cropping, stock-
2  watering, and grazing.
3         The Hawes affidavit shows that plaintiffs lack
4  standing.  Plaintiffs are speculating that if and when the DEQ
5  creates a TMDL for the Burnt River basin, the TMDL will be
6  similar to the TMDL for the Grande Ronde Basin.  The
7  Memorandum of Agreement has not injured plaintiffs.  Article
8  III requires that a plaintiff establish a more concrete and
9  immediate injury.
10        Because I conclude that this court lacks subject
11 matter jurisdiction over plaintiffs' claims, I will not
12 address the merits of their claims.  See Wilson v. A.H. Belo
13 Corp., 87 F.3d 393, 400 (9th Cir. 1996).

**III.  Remand**

15        The parties dispute whether this case should be
16 remanded to state court or simply dismissed.  When a case has
17 been removed from state court, "[i]f at any time before final
18 judgment it appears that the district court lacks subject
19 matter jurisdiction, the case shall be remanded."  28 U.S.C. §
20 1447(c).  Despite § 1447(c)'s apparently mandatory wording,
21 the Ninth
22 Circuit recognizes an exception if remand would be futile.
23 See Bell v. City of Kellogg, 922 F.2d 1418, 1424-25 (9th Cir.
24 1991).
25        In Bell, the Ninth Circuit set a high standard for

9 - OPINION

1 futility. The Ninth Circuit quoted dictum from a First Circuit
2 decision that recognized a possible exception when there is
3 "'an absolute certainty that remand would prove futile.'"  <u>Id.</u>
4 at 1425 (quoting <u>M.A.I.N. v. Commissioner, Maine Dep't of</u>
5 <u>Human Servs.</u>, 876 F.2d 1051, 1054 (1st Cir. 1989) (Breyer,
6 J.)).  In <u>Bell</u>, the court concluded that remand would be
7 futile because the plaintiffs had failed to post a bond
8 required by state law, which would have been fatal to their
9 claims in state court.
10 / / /

11       Other circuits have expressly rejected <u>Bell</u>'s
12 reasoning, holding that § 1447(c) requires remand regardless
13 of futility.  <u>See</u> <u>Bromwell v. Michigan Mut. Ins. Co.</u>, 115 F.3d
14 208, 213-14 (3d Cir. 1997) (stating that only Fifth and Ninth
15 Circuits recognize futility exception) (citing <u>Bell</u> and
16 <u>Asarco, Inc. v. Glenara, Ltd.</u>, 912 F.2d 784, 787 (5th Cir.
17 1990)).  The Ninth Circuit itself did not cite <u>Bell</u> in holding
18 that § 1447(c) "is mandatory, not discretionary."  <u>Bruns v.</u>
19 <u>National Credit Union Admin.</u>, 122 F.3d 1251, 1257 (9th Cir.
20 1997) (citing decisions from the Fourth and Seventh Circuits).
21
22       Here, assuming that <u>Bell</u> remains good law, I
23 conclude that defendants have not made a sufficient showing
24 that remand to state court would necessarily be futile.  <u>See</u>
25 <u>M.A.I.N.</u>, 876 F.2d at 1054.  Oregon courts apply their own
26 10 - OPINION

standards for ripeness and standing, which are not identical to federal standards. See, e.g., <u>Curran v. Oregon Dep't of Transp.</u>, 151 Or. App. 781, 786-87, 951 P.2d 183, 186 (1997) (ripeness under Oregon law); <u>People for Ethical Treatment of Animals v. Institutional Animal Care</u>, 312 Or. 95, 101-02, 817 P.2d 1299, 1303 (1991) (standing under Oregon law).

## CONCLUSION

Plaintiffs' motion for summary judgment (#43) is denied.  Defendants' motions for summary judgment (##51, 53, 58)

/ / /

/ / /

are granted.  This action is dismissed without prejudice for lack of subject matter jurisdiction and remanded to state court.

DATED this 27th day of April, 2001.

/s/ Owen M. Panner
_____
OWEN M. PANNER
U.S. DISTRICT COURT JUDGE

11 - OPINION